(December 19, 1891.)

## HAWKINS v. SPOKANE HYDRAULIC MINING CO.

[28 Pac. 433.]

PLACER MINING CLAIM—A PARTNER OWNING SEVEN-EIGHTHS OF CLAIM CAN CONTROL THE WORKING—ACCOUNTING MAY BE COMPELLED—PARTY OWNING MAJOR INTEREST IN PLACER CLAIM CAN CONTROL WORKING.—The plaintiff is the owner of a seven-eighths interest in a placer mining claim. The defendant is the owner of one-eighth interest in the same claim. Held, that the plaintiff has the right to control the means used and the method adopted in working said mine, and is entitled to an injunction to restrain said defendant from working said claim, except in the manner directed by plaintiff.

A MAJORITY OR MINORITY INTEREST CAN COMPEL ACCOUNTING.—An accounting may be compelled by either of the parties holding a majority or minority interest in a mine, of work done and metals extracted.·

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

Woods & Heyburn, for Appellant.

A partnership in the working of a mining claim exists whenever, either directly or indirectly, the owners thereof contribute to the expense of woking it. (*Dougherty v. Creary,* 30 Cal. 300, 89 Am. Dec. 116.) Any condition of facts which would warrant the dissolution of the partnership authorizes the appointment of a receiver and the granting of an injunction. (High on Injunctions, sec. 1351.)

Charles W. O'Neil and Frank Ganahl, for Respondent.

Mere ownership of a property, as joint tenants or tenants in common, between two or more parties, without other acts done by them in reference to the property, cannot constitute them partners. (Story on Partnership, sec. 82; *Crawshay v. Maule,* 1 Swanst. 518; *Dougherty v. Creary,* 30 Cal. 300, 89 Am. Dec. 116; *Settembre v. Putnam,* 30 Cal. 490; *Skillman v. Lachman,* 23 Cal. 199, 83 Am. Dec. 96, and note; *Henderson v. Allen,* 23 Cal. 519; *Bradbury v. Barnes,* 19 Cal. 120.) It is not waste for one tenant in common to work and mine for his own use and benefit in a workmanlike manner. (*Irwin v. Covode,* 24 Pa. St. 165; *Findlay v. Smith,* 6 Munf. 142, 8 Am. Dec. 733; *Woodward v. Gates,* 38 Ga. 213; *Drown v. Smith,* 52 Me. 143; *Crockett v. Crockett,* 2 Ohio St. 184; *Clemence v. Steere,* 1 R. I. 274, 53 Am. Dec. 621.)

MORGAN, J.—The plaintiff is the owner and possessed of an undivided seven-eighths interest in the Niagara placer mining claim, situated in the Cœur d'Alene mining district, Shoshone county, Idaho. The defendant is the owner of one-eighth interest in the same claim. Defendant, on or about the fifteenth day of June, 1891, took possession of a portion of said claim. Defendant is also the sole owner of a large stream of water, estimated at six hundred and fifty inches, with pipes, flumes, and other hydraulic machinery for conveying said water to and upon said placer ground, as well as other ground of the same character adjacent thereto. The defendant company has worked off a section of said claim during the season of 1891, without the consent and against the protest of the plaintiff. It is also admitted that the defendant is by the means aforesaid extracting the gold from said claim, and converting it to its own use. That the only value of said ground is the gold contained therein, and that said company refuses to sell said water to said plaintiff at any price that can be agreed upon. That the plaintiff, although the owner of an undivided seven-eighths of said ground, is practically excluded from any part or lot in the management of said work; that the defendant company, by its own men, foreman, and superintendent, works said ground to suit itself, without the consent of plaintiff, but invited plaintiff to come in and work with said defend-

ant simply as a worker. It is also admitted that the defendant company has extracted a quantity of gold from said ground, and thereafter Mr. Coulter, superintendent for said defendant, stated to Mr. Whitney, who, he says, is a co-owner with the plaintiff, that he had no objection to said Whitney or the plaintiff coming in, watching, and inspecting the clean-up, seeing what was going on, "but I told him that I did not want him to come into the ground sluices or take any active part in the clean-up." Defendant claims that said company has the right to refuse to sell water to plaintiff, and claims the right to work said ground in its own way, and is doing so, without the permission of plaintiff. Defendant company states that it is willing to account to plaintiff for the gold taken out of said claim, and deliver to him the seven-eighths thereof, whenever the said plaintiff shall pay to said defendant seven-eighths of the expense of extracting said gold. We are furnished with a statement of said expense in the defendant's answer, which is as follows:

| | |
|---|---:|
| Work and labor expended | $2,108.96 |
| Use of tools and appliances | 50.75 |
| Charge for water | 1,510.06 |
| Total | $3,669.77 |

In his affidavit, filed August 3, 1891, said Coulter furnishes the amount of gold extracted, which he says is a partial clean-up, which amount is $1,978.67. The record here is largely made up of affidavits of a number of witnesses and experts—those on the part of plaintiff, introduced for the purpose of showing that the defendant was wasting and losing gold by reason of the bad and expensive manner of defendant's working; those on the part of the defendant were introduced for the purpose of contradicting those of plaintiff, and to show that defendant was working said placer mine in an economical and careful manner. The court below, after considering said affidavits and the allegations of the parties, dissolved the temporary restraining order, refused to appoint a receiver, and refused the injunction. From said order the said plaintiff takes an appeal to this court. In the view we take of this case, it

is not necessary to sum up the evidence presented in said affidavits. The result of the clean-up and the statement of expenses is a sufficient summing up of the whole matter, as it appears that the amount of gold extracted was $1,978.67; expenses were $3,669.77. How much better showing might be made by a complete clean-up we are not informed, nor is it necessary that we should be. The question for this court to determine is, simply, Does a mining partnership exist in this case, and does the fact that the plaintiff in this suit owns seven-eighths of this mine, and the defendant owns one-eighth thereof, entitle the plaintiff to control and direct the working thereof, and the means to be used in said working?

Section 3300 of the Revised Statutes of Idaho, is as follows: "A mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it, and extracting the mineral therefrom, actually engage in working the same." It is not necessary that all the co-owners in a mining claim shall engage in working a mine, together or separately. The partnership exists without an agreement, either express or implied. Section 3301 is as follows: "An express agreement to become partners, or to share the profits and losses, is not necessary to the formation or existence of a mining partnership. The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the ores therefrom." The relation differs from that of tenants in common, in this: that the co-owners in a mine are partners without agreement to become such, while tenants in common are not, except by agreement. The necessity for this relationship arises from the character of the property, as in working a mine the very life, the substance, the sole value of the property is taken out and carried away, leaving the ground from whence the precious metal is taken barren and worthless for mining purposes, which in this case, as in others of like nature, is its sole and only value. This partnership is admitted by the defendant, as it admits that the plaintiff is entitled to seven-eighths of the proceeds after paying the same proportion of expenses, and so it is specified in the statute (section 3302): "A member of a mining partnership shares in the profits and losses thereof in the proportion which the

interest or share he owns in the mine bears to the whole partnership capital or whole number of shares." The mine is the partnership capital, whether purchased with partnership or individual funds, and so says the statute (section 3304) : "The mining ground owned and worked by partners in mining, whether purchased with partnership funds or not, is partnership property." From the foregoing provisions it follows that those owning a majority of the shares or interests in a mining partnership have the right to control its methods of working, and thus says the statute (section 3309) : "The decision of the members owning a majority of the shares or interests in a mining partnership binds it in the conduct of its business."

In *Dougherty v. Creary,* 30 Cal. 300, 89 Am. Dec. 116, the court says: "It is indispensable to the conducting of the business of mining that those owning the major portion of the property should have the control, in case all cannot agree." Further on the court says: "It might and often would work great inconvenience and damage to the minority in interest of a mining partnership, if the majority were allowed to do as they might deem to their own advantage regardless of the rights and interests of the minority. But, notwithstanding the danger of the abuse of power in such cases, what may be necessary and proper for carrying on the business of mining for the joint benefit of all concerned must be determined by those owning and holding in the aggregate the major part of the property" ; and, if the power thus held and exercised by the majority is used in a manner that will imperil or disastrously affect the interests of the minority, the latter has the right to resort to the court for redress and protection. It was long since decided by the courts that a mining partnership differed from an ordinary partnership in many of its features, among which are the following: It is formed without any express agreement between the parties existing from joint ownership in a mine and working the same. One partner may sell his interest without the consent of the others, or die, and the partnership is not dissolved. A new owner may purchase an interest in the mine, or inherit it, and he becomes a mining partner in the working thereof. (*Duryea v. Burt,* 28 Cal. 579.) It differs from an ordinary partnership in another respect, also, in that, as stated

above, the majority in interest have the right to control the method of working and the means to be employed. In these respects and in its continuity, it resembles a private corporation. To avoid mistakes in the position of the parties thereto and the condition of the property, all of these characteristics have been enacted in a statute as quoted above in this state, and also in California and in other mining states. The case of *McCord v. Mining Co.,* 64 Cal. 134, 49 Am. Rep. 686, 27 Pac. 863, is largely relied upon by the respondent in this case; but that case does not militate against this opinion. In that case the majority interest was working the mine, and the questions, as stated by the court, were, Do the excavation and removal of cinnabar from a quicksilver mine, or the cutting of timber trees, used in working the mine, by one tenant, constitute waste for which his cotenants may recover treble damages? Do such excavation, and cutting and conversion, constitute waste which should be enjoined? Are the plaintiffs entitled to an accounting? These are entirely different questions from those in the case at bar. In this case the plaintiff owns the majority interest, and asks to be permitted to control the management of the mine and the method of working the same, the means employed, and that defendant be enjoined, and for an accounting. The facts set forth in the answer and in the defendant's own affidavit furnish abundant reason why the prayer of the plaintiff should be granted. The defendant has expended a large amount of money in working the mine, $2,108; brings, in addition, against the plaintiff a charge for water, $1,500.06; for use of machinery, $50.75; and with all this expenditure defendant reports that it has obtained from said claim, in gold, $1,978.67. The plaintiff is entitled to control the means used and the method adopted in working the mine. The order refusing an injunction is reversed, and the cause remanded, with direction to the court below to grant the injunction to restrain the defendant from working said mine, except in the manner directed by plaintiff, to compel the defendant to pay all the proceeds of the work already done by it into court, and compel an accounting by the defendant. Costs of appeal awarded to appellant.

Sullivan, C. J., and Huston, J., concur.