(December 26, 1896.)

## BROWN v. BRYAN.

[51 Pac. 995.]

TRUST DEED—MINING PARTNERSHIP—TRANSFER OF PROPERTY BY ONE MEMBER—FRAUD.—One member of a mining partnership uses the money of the partners to purchase an outstanding trust deed upon the mining property, given by his copartner, taking the transfer in the name of a third person, who had no interest in the transaction; causes the property to be sold, and bid in by said third party as his agent, and afterward procures a transfer to be made of the property to himself and another partner. *Held*, that such transfer was void, and the property should be decreed to belong to the maker of the trust deed or his grantee.

(Syllabus by the court.)

APPEAL from District Court, Alturas County.

Brown & Henderson, for Appellant.

Venable purchased this deed of trust with funds, a large part of which belonged to Roberts, and all of which had been money of the firm; the deed of trust became the property of the firm and was no longer capable of being foreclosed by advertisement under the power of attorney contained in it. Such foreclosure is in the nature of enforcing a penalty. It has been recognized by the decisions of this state from which we derive our practice, but it is not authorized or recognized

in any statute. The statute expressly prohibits it. It pro- • vides "that there can,, be but one action for the recovery of any debt or enforcement of any penalty secured by mortgage upon real estate or personal property," and that one action a suit in chancery in the form of a foreclosure bill. Under these circumstances, plaintiff asks a court of equity to set aside the result of the forfeiture which is claimed by Venable, and being enforced contrary to his duty to his partner Roberts. Roberts and Venable stand in the relation to each other as trustees, and *cestuis que trust* the same as any other partners. Each was entitled at the hands of the other to honest and square dealing. (*Koehler v. Black Iron Co.*, 2 Black (U. S.), 720; *Brooks v. Martin*, 2 Wall. 82; *Reed v. Wessell*, 7 Mich. 139; 2 Lindley on Partnership, 303, 304, note.)

Kingsbury & Parsons and Johnson & Johnson, for Respondents.

Venable had a legal right to purchase the trust deed and to purchase the property at a sale under it; that he did this was admitted on the trial. There was no evidence of any concealment or attempted concealment, or that Roberts was in any wise deceived. In this matter, as in all others, the rebuttal of defendant's evidence consists in counsel's argument alone. (*Bradbury v. Barnes*, 19 Cal. 120; *McKenzie v. Dickinson*, 43 Cal. 119; *Felton v. Le Breton*, 92 Cal. 458, 28 Pac. 490; 27 Am. & Eng. Ency. of Law, 264, and cases cited; *Easton v. German-American Bank*, 127 U. S. 210, 8 Sup. Ct. Rep. 1297; *Whitney v. Fox*, 166 U. S. 637, 17 Sup. Ct. Rep. 717.) It may be stated as a principle of law now well settled that in adopting the statutes of a state the construction given the statutes by the highest courts of the state from which they were taken was adopted with them. (*Railroad Co. v. Moore*, 121 U. S. 558, 7 Sup. Ct. Rep. 1334; *McDonald v. Hovey*, 110 U. S. 619, 4 Sup. Ct. Rep. 142; *United States v. Ryder*, 110 U. S. 729, 4 Sup. Ct. Rep. 196.) The case of *Koch v. Briggs*, 14 Cal. 261, 73 Am. Dec. 651, is the leading case upon the question of a trust deed not being a mortgage requiring foreclosure in statutory form, and is sustained in *Grant v. Burr*, 54 Cal. 298; *Bateman v. Burr*, 57 Cal. 480; *Durkin v. Burr*,

60 Cal. 360; *First Nat. Bank v. Bell etc. Min. Co.,* 8 Mont. 32, 19 Pac. 403; *Cooper v. Whitner,* 3 Hill (N. Y.), 95. When the sale has been made the interest of the mortgagor is wholly devested, including his equity of redemption. (2 Washburn on Real Property, 80.) A power of sale is one species of foreclosure. (*Blackwell v. Barnett,* 52 Tex. 333.)

For some years prior to September 22, 1888, George W. Venable, George V. Bryan and George H. Roberts had been mining partners, each owning one-third in the Red Elephant and other mining properties, described in the complaint. On the said date the partners met and effected a settlement of previous accounts, which had been kept in such a manner that it was difficult to tell how much each had advanced, each had drawn, and how much each was debtor or creditor of the firm. This settlement culminated in the following agreement, to wit:

"Whereas, the undersigned, George H. Roberts, George V. Bryan and George W. Venable are mining partners and working the Red Elephant group of mines in Mineral Hill Mining District, in Alturas County, Idaho Territory, and have been so working said mine for some time past; and whereas, for the purpose of carrying on the work of said mine, and the payment of the debts of said partnership, said George W. Venable has advanced to said company on May 1, A. D. 1888, the sum of five thousand ($5,000) dollars, bearing interest at the rate of six per cent per annum.

"Now, in consideration of the premises, it is mutually agreed by and between said parties that the said George W. Venable shall be paid out of the first proceeds of said mine the sum of $5,000, with the interest as aforesaid, and the same shall be so paid him as the same accrues. And the said Bryan and Roberts hereby transfer and assign to said Venable the proceeds of said mine until the said $5,000 and interest shall be fully paid.

"And it is further agreed on the part of said Venable that said Roberts and Bryan shall each have the right to draw from the proceeds of said mine $200 per month until a further agreement is made by and between the parties hereto. And it is further agreed that the said Roberts shall, at this

time, draw the sum of $500, the same to be on account of said $200 per month, he to receipt for the same as such. Such amounts to be so drawn by said Bryan and Roberts to be charged to them against their respective interest in said mines.

"It is further understood and agreed that after the said sum of $5,000 shall have been fully paid and liquidated, the proceeds of said mines, after deducting the monthly dividend to be paid to said Bryan and Roberts as herein provided, shall be placed in a fund for the purpose of the future operation of said mines, to be used for the erection of machinery or otherwise, as the said parties may agree. And it is understood and agreed by and between the parties hereto in adjustment of the several amounts due from the partnership to the several members thereof, that there is due George W. Venable in addition to the said sum of $5,000 above mentioned, the sum of $5,664.18, moneys advanced by him for the use of said partnership, and it is agreed that the same shall bear interest at the rate of six per cent per annum from November 1, 1887, and that there is due George H. Roberts from said partnership for moneys advanced by him for the use of said partnership the sum of fifteen hundred ($1,500) dollars which it is agreed shall bear interest at the rate of six per cent per annum from November 1, 1887. And this arrangement and agreement shall be in full adjustment and settlement of all past accounts between said parties, and shall form the basis of new accounts from this date forward.

"In witness whereof, the said parties have hereunto set their hands this 22d day of September, A. D. 1888.

> (Signed)  "GEO. H. ROBERTS.
> (Signed)  "GEO. W. VENABLE.
> (Signed)  "GEO. V. BRYAN.

"Witness:
  (Signed)  "LYTTLETON PRICE."

It will be seen by the terms of this agreement that the claim of $5,000, which is admitted to be what is termed the Stevenson claim, was to be paid out of the first proceeds of the mine after this amount was settled. It was agreed that Roberts and Bryan were each to receive $200 per month until a further

agreement is made between the parties, and after the said sum of $5,000 was paid and after deducting the monthly dividends to be paid to said Bryan and Roberts, the proceeds of the mine were to be placed in a fund for the future operation of said mines.

It was also agreed that there was due the said mining partners, as follows: To George W. Venable the sum of $5,664.18, and to George H. Roberts the sum of $1,500, both of which sums were to bear interest at the rate of six per cent per annum from November 1, 1887. This agreement is dated September 22, 1888. The said mine, or a portion thereof, was then, on the 24th of September, 1888, leased to. George V. Bryan, aforesaid.

On the twenty-fifth day of January, 1889, the said George H. Roberts gave a trust deed to Frank Taylor of Hailey, Idaho, for the benefit of the First National Bank of Hailey, party of the third part, to secure the payment of the sum of $1,500, on the twenty-fifth day of July, 1889, upon the following property, to wit: The Red Elephant lode, the Queen Fraction lode, the Caledonia lode, the O. K. claim, and the Red Elephant, Central, Queen Fraction and Caledonia millsites, describing the same. Said trust deed contained a power of sale, which authorized the holder of said trust deed and promissory note given said bank for said money, in case of default of payment of the same, to sell said property at public sale, after advertising the said sale by publishing the time and place of the same, with description of the property, for three weeks in some newspaper published in the county, where said property is situated, and authorizing the holder of said note or his assigns or agent, to become the purchaser of said property.

On the twentieth day of July, 1889, the First National Bank of Hailey sold and transferred all its interest in said note and trust deed to J. H. Moore, of the city of New York; the said Moore was the agent of the said George W. Venable, acted for, and was his agent in the purchase of said note and trust deed and all his subsequent proceedings, with relation thereto; and from first to last, acted under the direction of the said Venable in all things and had no personal interest in said

trust deed nor in the purchase of the property therein described.

On the seventeenth day of August, 1889, the trustee, Frank Taylor, after giving notice as required by the terms of said deed, exposed for sale, and sold at public auction, the property therein described and now in controversy in this cause to J. H. Moore, who was, in all the proceedings, the agent of George W. Venable, as aforesaid, and the said Frank Taylor conveyed to said Moore, on the twenty-sixth day of August, 1889, the said property.

The sale of the mining property under trust deed was attended by W. H. Watt, who was also the agent of G. W. Venable, and under Venable's instruction purchased the property for Venable in the name of Moore, and his fee of $100 for this service was charged to the Red Elephant Mining Company—that is, the partnership of G. V. Bryan, G. W. Venable and G. H. Roberts, mining partners in the same property, and said fee was paid by G. V. Bryan by check, signing himself as "Supt.," meaning superintendent of said Red Elephant Mining Company.

In March, 1889, a short time before G. W. Venable purchased the trust deed from the First National Bank, Venable testifies that he received $1,550 from the Red Elephant Company, that is, from Bryan, Venable and Roberts (sent him by said G. V. Bryan), which he credited to the company on his books. The purchase of the trust deed was made by Venable through his said agent Moore, from the First National Bank of Hailey on July 20, 1889. On June 29, 1889, the said G. W. Venable charged the Red Elephant Company with $1,000, and July 27th, seven days after purchase of trust deed, said Venable charged said company with $558.25, being in all $1,558.25, the amount Venable paid for the trust deed against Roberts.

The evidence further shows that by direction of Venable, Moore transferred the interest so acquired from Roberts to himself and G. V. Bryan.. On the thirteenth day of February, 1890, the plaintiff in this case, having before that acquired from said Roberts all his interest in the said Red Elephant Mining Company's property, tendered to Frank Taylor, trustee

as aforesaid, the sum of $1,900, being amount due on said trust deed with interest, and all costs and expenses attending the execution of said trust, and demanded a deed from said Taylor of the said Red Elephant Company's mining property. This tender was made for the purpose of redeeming said property from the sale made on the seventeenth day of August, 1889.

MORGAN, C. J.—In the view we take of this case there is no necessity of determining whether the trust deed given to the First National Bank of Hailey can be foreclosed by notice and sale, as was done in this case, or whether it must be foreclosed by suit as seems to be required by sections 4520 and 4523 of the Revised Laws of Idaho. I may say, however, that this court has repeatedly decided that a deed absolute on its face and a contemporaneous contract for reconveyance upon payment of amount due grantee, that is, an article of defeasance, although in a separate paper, constituted a mortgage, and must be foreclosed as by section 4520 et seq. is required. (*First Nat. Bank v. Williams,* 2 Idaho, 670, 23 Pac. 552; *Kelley v. Leachman,* 3 Idaho, 392, 29 Pac. 849, and cases there cited; *Wilson v. Thompson,* 4 Idaho, 678, 43 Pac. 557.)

If a deed absolute with a contract of defeasance on a separate paper is a mortgage, upon what ground can it be said that a trust deed which repeatedly recites that it is given to secure an indebtedness with a clause of defeasance in the instrument itself is not a mortgage? Notwithstanding the authorities that are and may be cited to sustain the contrary doctrine, I am constrained to say that this court cannot be a party to setting aside a plain and positive statute by judicial decision.

Considerable space in the brief of respondent is occupied in showing by argument and authority that one member of mining partnership may buy out the interest of his copartner in the property with his own money and hold, retain and own it, in his own right, and the mining partnership continue in the management and working of the mine. There can be no doubt of the correctness of this proposition. This court has so decided, substantially, in the case of *Hawkins v. Spokane Hydraulic Min. Co.,* 3 Idaho, 241, 28 Pac. 433, but to claim

that therefore one partner has the right to use the partnership funds on his own motion, without authority of the other partners, to purchase an outstanding mortgage or trust deed given by his copartner upon the mining property, cause it to be foreclosed by notice and sale, to be bid in, in the name of his agent and then transferred to himself, or to himself and another partner, and thereby obtain title in himself, is a *non sequitur*.

On September 22, 1888, Roberts, Venable and Bryan agree *inter alia* that Roberts shall be paid $200 per month until the parties otherwise agree. In April, 1889, Venable, defendant herein, ordered Bryan to cease paying Roberts the $200 per month, which was accordingly done. Each of the parties, Bryan, Roberts and Venable, owned one-third interest in the property. Therefore, each had equal authority in the management of the mine and its proceeds; Venable had no more authority to stop this payment without agreement of the others than Roberts alone would have had to order its beginning. (*Hawkins v. Spokane Hydraulic Co.*, 3 Idaho, 241, 28 Pac. 433.) That he was a larger creditor of the partnership than was Roberts gave him no more authority in the absence of legal proceedings than Roberts. The money due Roberts then accumulated until the purchase of this trust deed, which was July 20, 1889.

On March 18, 1889, by direction of Venable (as shown by the books kept by Venable with the mining partnership), the sum of $1,500 was sent to him, from the proceeds of the mine. This was after the Stevenson indebtedness had been paid in full. Roberts then had as much right to direct Bryan to pay his money to him as had Venable to require it to be paid to himself. If it had been paid to Roberts, he could have taken up the trust deed. On June 20, 1889, Venable used this money to buy up the Roberts deed; at least Venable charges the firm, Roberts, Bryan & Venable, with the money used to buy the trust deed. The account kept by Venable's bookkeeper by direction of Venable, and the latter's testimony, shows it was so charged—$1,000 on June 29th and $558 on July 27, 1889.

The mine then purchased the trust deed against Roberts, and the latter had as much right to control the funds of part-

nership as Venable.   In our opinion, the funds of the partner-
ship having purchased the trust deed, the title is held in trust
for the benefit of Roberts or his grantee.   Venable then directed
Moore to foreclose the trust deed by notice and sale, bid the
property in and afterward transfer it to himself and George
V. Bryan, the mining partner, all of which, with all due dili-
gence, Moore obediently did.   That the purchase of the trust
deed was made with the money of the firm, and afterward
foreclosed in the interest of Venable and by his direction, was
apparently concealed from Roberts, until the transaction was
fully completed.

Now this court is asked to approve of this method of ac-
quiring the property of a mining partner.   The court cannot
be made a party to such proceeding.   This court holds that,
upon the showing made, the transfer to Bryan and Venable,
respondents, of the mining property described in said deed,
should be set aside and held for naught, and the interest there-
in attempted to be conveyed be decreed to be the property of
the plaintiff herein.

The only question submitted to this court by the appellant,
is, "Can one partner take the funds of the partnership, go out
and buy a deed of trust of the interest of his copartner, fore-
close it secretly, bid it in and hold title to the whole?"   This
question is sufficiently answered in the opinion.

The order of the court below overruling plaintiff's motion
for new trial is reversed and a new trial ordered, upon the is-
sues formed by the pleadings.   Costs awarded to appellant.

Huston and Sullivan, JJ., concur.