(January 28, 1896.)

## WILSON v. THOMPSON.

[43 Pac. 557.]

DEED, WHEN A MORTGAGE.—Defendants executed and delivered a deed of certain real property to plaintiff. At the same time plaintiff executed a contract to defendants by the terms of which plaintiff agreed to redeed to defendants the said land, upon the payment to him of the sum of $800 with interest, within one year, etc., defendants giving to plaintiff a promissory note for that amount. *Held,* that the deed and contract constituted a mortgage.

PLEADING.—Complaint in this case examined and held not to contain facts sufficient to constitute a cause of action.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

L. Vineyard and D. D. Williams, for Appellants.

A deed absolute on its face, and a separate agreement by the grantee for a reconveyance of the same tract to grantor upon payment of consideration named in the deed by a specified time, bearing same date as deed, constitute together a mortgage. (*Kelley v. Leachman,* 3 Idaho, 392, 29 Pac. 849; Devlin on Deeds, sec. 1101; Jones on Mortgages, sec. 244; *Brush v. Peterson,* 54 Iowa, 243, 6 N. W. 287; *Hill v. Edwards,* 11

Minn. 8; *Baker v. Insurance Co.,* 79 Cal. 34, 21 Pac. 357; *Wilson v. Schoenberger,* 31 Pa. St. 295; *Rietenbaugh v. Lutwick,* 31 Pa. St. 131.) The test by which to determine whether a transaction is a mortgage or a defeasible sale is the fact whether or not there is a subsisting, continuing debt from the grantor to the grantee, and the only inquiry necessary to be made is, whether the debt still subsists between the parties. (*Montgomery v. Spect,* 55 Cal. 352.) If the debt subsisted after the instruments were executed, they constitute a mortgage. (*Hickox v. Lowe,* 10 Cal. 197; *Gay v. Hamilton,* 33 Cal. 686.)

Hawley & Puckett, for Respondent.

Appellants' first proposition, that "the court erred in overruling defendants' demurrer to plaintiff's complaint," upon the ground that "it does not appear by the complaint that plaintiff is or was the owner of the land in dispute or is or was entitled to the possession thereof." He attempts to set forth in his complaint a specific deraignment of title, but does not aver any fact that he would be required to prove in order to recover, and cites the case of *Castro v. Richardson,* 18 Cal. 478, as sustaining that proposition. The proposition as stated by counsel and set forth above is perhaps the law and sustained by the case cited, but does not apply to this case. We do not allege a specific deraignment of title, but title is averred in general terms which is proper in an action of this kind. (*Castro v. Richardson,* 18 Cal. 478; *Morton v. Folger,* 15 Cal. 283.) But if plaintiff had alleged a specific deraignment of title, we contend that it would not have been necessary to prove the same, as defendants in their answer supply that proof by setting up the deed from the defendants to plaintiff, and thereby deraigned his title for him. Evidence to show that an absolute deed was intended as a mortgage must be clear and satisfactory. (*Albany etc. Water Co. v. Crawford,* 11 Or. 243, 4 Pac. 113; *Penney v. Simmons,* 99 Cal. 380, 33 Pac. 1121; *Brison v. Brison,* 90 Cal. 327, 27 Pac. 186; *Ensign v. Ensign,* 120 N. Y. 656, 24 N. E. 942; *Mahoney v. Bostwick,* 96 Cal. 53, 31 Am. St. Rep. 175, 30 Pac. 1020; *Corbit v. Smith,* 7 Iowa, 60, 71 Am. Dec. 431; *Hogan v. Jaques,* 19 N. J. Eq. 123, 97 Am. Dec.

644; *Ensminger v. Ensminger,* 75 Iowa, 89, 9 Am. St. Rep. 462, 39 N. W. 208; *Peagler v. Stabler,* 91 Ala. 308, 9 South. 157; *Wilson v. Parshall,* 129 N. Y. 223, 29 N. E. 297; *Batcheller v. Batcheller,* 144 Ill. 471, 33 N. E. 24; *More v. Calkins,* 95 Cal. 435, 29 Am. St. Rep. 128, 30 Pac. 583; *Conway v. Alexander,* 7 Cranch, 236; *Flagg v. Mann,* 14 Pick. 478.)

HUSTON, J.—This is an appeal from a judgment of the district court for the county of Ada. This action is *sui generis.* It is not an action in ejectment, because it alleges neither possession, ownership, nor ouster. It contains none of the essentials of a complaint under the statute for *quia timet.* It alleges a contract between plaintiff and defendants by which plaintiff agreed to sell to defendants, for the sum of $800, to be paid within one year, with interest at the rate of one per cent per month, certain real estate situated in Ada county, Idaho. This contract is not, as appears, predicated upon any ownership or possession, right, or title in or by the plaintiff. To this complaint a general demurrer was interposed, which was overruled by the district court. This was error. The wisdom of Solomon, accentuated by the legal lore of Coke and Mansfield, could not devise a judgment which this complaint would support. The evidence, as appears by the record, shows this state of facts:

On the thirty-first day of December, 1891, the defendants were the owners of, and in possession of, a certain tract of land situated in Ada county, Idaho; and on that day they purchased of the plaintiff certain lands in Kansas, and, to secure him for the purchase price thereof, they executed to plaintiff a deed of said land in Ada county, taking back from plaintiff, at the same time, a contract or agreement, of which the following is a copy:

"This agreement, made and entered into this thirty-first day of December in the year of our Lord 1891, between Henry G. Wilson, of Boise City, Ada county, and state of Idaho, party of the first part, and Ellen Hayes Thompson, of Boise City, Idaho, party of the second part, witnesseth, that the said party of the first part, in consideration of the covenants and agreements on the part of the said party of the second part hereinafter contained, agrees to sell and convey unto the said party of the second part, and the second party agrees to buy, all that

certain lot, piece, or parcel of land situated, lying, and being in the county of Ada and that state of Idaho, and particularly bounded and described as follows, to wit: The northeast quarter of the northwest quarter of section No. 13, township 3, containing forty acres, more or less, according to government survey, for the sum of eight hundred dollars ($800), lawful money of the United States; and the said party of the second part, in consideration of the premises, agrees to pay to the said party of the first part the said sum of eight hundred dollars ($800), as follows, to wit, $800.   One year after date, I promise to pay Henry G. Wilson, or order, the sum of eight hundred dollars, at Boise City, Idaho, for value received, with interest at the rate of one per cent per month from date until paid.   And the party of the second part agrees to pay all state, school, and county taxes or assessments, of whatsoever nature, that are or may become due on the premises above described.   In the event of a failure to comply with the terms hereof by the party of the second part, the said party of the first part shall be released from all obligations, in law or equity, to convey said property, and the said party of the second part shall forfeit all rights thereto, and all payments made on said property; and the said party of the first part, on receiving such payment at the time and in the manner above mentioned, agrees to execute and deliver to the said party of the second part, or her assigns, a good and sufficient warranty deed to said premises, free from all encumbrances; and it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties.   In witness whereof, the said parties to these presents have hereunto set their hands and seals the day and year first above written.

"[Seal.]                         ⸱      H. G. WILSON.

"Signed, sealed, and delivered in presence of O. L. Miller.

"Duly acknowledged on January 2, 1892, and recorded February 3, 1893, in the records of Ada county."

The character and purpose of the transaction is shown by the evidence of the defendant Ellen Thompson and S. L. Tipton.

Mr. Tipton testifies as follows: "My name is S. L. Tipton. Am an attorney at law by profession.   I know W. L. Thompson

and Mrs. Thompson; I was their attorney during the months of November and December, 1891. I remember making arrangements with Mr. H. G. Wilson with regard to the transfer to defendants of certain Kansas property. That arrangement was: Mr. Wilson was to deed four lots in El Dorado, Kansas, to Mrs. Thompson. In consideration of that, he was to get a mortgage for $800 on forty acres of land which she owned over here on the Mesa; and, as my understanding was at the time, it was to be in the nature of a deed to him, and he was to give back a contract of purchase, in which, if she would pay the debt within a year, he would redeed the property. This must have been in November or December, 1891. I might have had more than one conversation with him. I don't remember whether or not that arrangement was ever carried out." Cross-examination: "I cannot say we had a contract. I don't mean to say a direct contract, but we had a conversation of that kind. I am sure this was in December, 1891. I believe this was in the Odd Fellows' Building. They had just completed the new part of the building, and we had the conversation there. It runs in my mind that the rooms were not completed. I am satisfied we had this conversation in regard to his conveying to Mrs. Thompson these four lots in El Dorado, Kansas. I think Mrs. Thompson was there, and I am sure Mr. Wilson was present. There might have been somebody else. This conversation took between one-half hour and an hour. I might have had more than one conversation. 1 don't think I ever had more than two conversations with him. I am satisfied I had two. I might have had more. I went to that office that day, and asked him what he would take for that property in Kansas, and he told me he would take $800; and I said, 'Yes, and you will take a good deal less' (using a profane word instead of 'good'). I told him that Mrs. Thompson could not pay the money; that he would have to be secured in some way. I knew she had no means by which she could raise the money, and I thought it was necessary for her to have the Kansas property. I think we had a further conversation at that same time about his wanting to take a mortgage on the home which she lived in to secure that $800; that is, their house down in City Park addition, or Riverside, in Boise City. 1 am pretty well satisfied that is the case. I did not draw up any

papers nor memorandum.   I think Mr. Curtis drew the papers.
I am not aware of that.   We were both interested in the case
for the Thompsons.   I never saw the papers that were drawn."

Mrs. Ellen Thompson testifies as follows: "I remember going
to Mr. Wilson's office with my attorney, and making arrange-
ments about this transaction.   In the first place, Mr. Hartley
traded property to me in Kansas.   I went to Mr. Wilson, and I
says: 'We are bit on that property in Kansas.   I would like
those four lots back, in order to pass Mr. Hartley his property
back the same as I got it.'   And I asked Mr. Wilson what he
would take for those lots, and he said, '$200.'   I went there
with Mr. Tipton, and I asked Mr. Wilson for those four lots
back.   He said he was willing to do it for $800, and got me to
give him this forty acres for security for the $800.   I agreed
to pay that $800 in one year from that time.   This was reduced
to writing, in the shape of a bond for a deed back.   He agreed
to take the $800.   I was, under the circumstances, obliged to
allow him the $800.   I didn't have a dollar.   I expected to
settle this when Mr. Hartley settled with me.   I gave him that
security for those lots back in Kansas, and I gave him as such
security my forty acres sagebrush ground.   He agreed, when-
ever I paid him the $800, to redeed the property to me.   Those
papers were executed in an unfinished room in the back part of
Odd Fellows' Hall.   Mr. Wilson's office was there, and these
papers were executed in that office.   I never executed any other
deed to Mr. Wilson on my forty acres.   That is the only thing
I gave him.   (Papers handed witness.)   This is the security
that I gave to Mr. Wilson for the $800.   Mr. Wilson at the same
time executed a paper to me, it was a contract or a bond for
a deed.   It was for that ranch back whenever I paid him the
$800.   I reside on the forty acres in controversy.   It is the
farm that I live on.   I have no more land out there.   At the
time I executed this deed, he gave me back a contract to recon-
vey the same property on the payment of that $800."   Cross-ex-
amination: "My husband was not there all of the time.   I
talked with Mr. Wilson, asking him for the four lots, after I
returned from Kansas without Mr. Thompson, because I deeded
them to Mr. Wilson.   It was my deed.   There was a note given.
I had to give a note.   Mr. Wilson—I couldn't help myself.   I

had to. I mean a promissory note. I swear to that. I am just as sure of that as I am of anything else. There was but one deed made that I have any recollection of. I made the deed to the El Dorado property to Wilson at Hartley's office. I did not know Wilson at the time I deeded the El Dorado property. This was a short time before. He asked me $200 for that property, and then he raised it to $800. It was not $200 a lot. The first thing I asked Wilson, on my return. I told him how the Kansas property was, and I told him I wanted the four lots back. I got to give them back, and I asked him what he wanted for them. He says, '$200.' When I went to get him to deed them back, he asked $800."

This testimony is undisputed, and, as far as it goes, is conclusive, and, it seems, establishes the character of the deed by defendants to the plaintiff, and that the same was given and intended by the parties as a mortgage. The case, as shown by the evidence, is so clearly within the rule given by this court in *Kelley v. Leachman,* 3 Idaho, 392, 29 Pac. 849, that it seems to us unnecessary to go into a discussion or citation of authorities.

Exception was taken by defendants to the refusal of the court to give the following instructions: "The jury is instructed that, if a promissory note was executed by the defendants to the plaintiff, then I instruct you that that fact is strong evidence to show that the deed was intended as a mortgage." We think there was no error in refusing this instruction, for want of definiteness. It does not refer to either time when the promissory note was given, nor the amount thereof.

Exception is also taken by defendants to the refusal of the court to give the following instructions: "The jury is instructed that if you find from the evidence that the defendants were in the peaceable possession of the land in controversy in this action on the thirty-first day of December, 1891, and at that date they executed a deed, absolute on its face, to the plaintiff, as security only, and that at the same time, or as a part of the same transaction, the plaintiff executed the agreement, bearing same date, to reconvey the land to the defendant Ellen Hayes Thompson upon payment by the defendants, or either of them, of the consideration named in the deed, with interest, taxes, etc., by a

specified time, the two instruments together constitute a mortgage, and in such case this action will not lie to obtain possession of the land from the defendants." We think this instruction correctly states the law, and should have been given, and its refusal was error. The judgment of the district court is reversed, and cause remanded for further proceedings in accordance with this opinion. Costs to appellants.

Morgan, C. J., and Sullivan, J., concur.