Clinton W. TYLER, Jr., Appellant,

v.

PEEL CORPORATION, Peihl Vankerhoof Corporation, and Peihl Corporation, Appellees.

No. 22947.

United States Court of Appeals Fifth Circuit.

Jan. 25, 1967.

---

Eugene M. Kerr, Starkey S. Flythe, Oliver K. Mixon, James B. Flythe, Augusta, Ga., and J. Clif Hatcher, for appellant.

E. D. Fulcher, Augusta, Ga., for appellees, Fulcher, Fulcher, Hagler, Harper & Reed, Augusta, Ga., of counsel.

Before TUTTLE, Chief Judge, and BROWN and GODBOLD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The Georgia question here involved is the liability of the General Contractor of a building project to the Employee of a Subcontractor for injuries sustained by reason of the General Contractor's failure, after being warned, to remove certain high tension wires running through the construction site in which the Subcontractor's employees would be working. The District Court, by sustaining the General Contractor's motion to dismiss, F.R.Civ.P. 12(b), determined that the Employee would have no claim. We disagree and remand.

Coming as they do solely from the complaint, the facts may be severely capsulated. The Employee Tyler was employed by the Subcontractor [1] which had contracted with the Defendant General Contractor,[2] to erect the structural steel components of a building being constructed

1. R. J. Gaines Construction Co.
2. Peihl Corporation is a Florida Corporation. Also named in the complaint is Peel Corporation which, by charter amendment of March 16, 1963, has now become the Peihl Vankerkhoff Corporation. The Defendants will be referred to collectively as General Contractor.

in Waynesboro, Georgia. Located some 40 feet above the work site were certain high tension wires carrying 44,000 volts alternating current. The General Contractor had been instructed by the Georgia Power Company to remove these lines before commencing the construction, but failed to do so. The Employee, the "rigger" on a crawler crane, was injured on October 12, 1962, when, while his attention was focused on the load he was lifting, the boom of the crane upon which he was working came in contact with the high wire.

It rounds out this brief narrative to state that the Employee survived and instituted this suit against the General Contractor. The General Contractor filed a motion to dismiss the complaint for failure to state a claim, F.R.Civ.P. 12(b), which, after arguments but without any supporting affidavits or other evidence, was granted.

The Employee predicated his right to recover on the theory that the General Contractor of the building project was an occupier of the land within the meaning of the Georgia statutes [3] and therefore owed to business invitees working on the project the duty to provide a safe place in which to work. This duty, the theory continues, was breached by the failure to remove the high tension wires from above the working site, directly producing the Employee's injuries. The theory is good Georgia law. For it is clear that a general contractor engaged by the owner of property to perform construction or repair work thereon and who takes possession of the premises assumes the status of "occupier." Butler v. Lewman & Co., 1902, 115 Ga. 752, 42 S.E. 98; Fulton Ice & Coal Co. v. Pece, 1923, 29 Ga.App. 507, 116 S.E. 57. This sets in train the duty to use ordinary care to see that the premises are in a reasonably safe condition for the workmen on the

project. Braun v. Wright, 1959, 100 Ga. App. 295, 11 S.E.2d 100; see also Christian Constr. Co. v. Wood, 1961, 104 Ga. App. 751, 123 S.E.2d 151. Furthermore, this duty exists even though the general contractor has no relation to the contract of employment between the subcontractor and its employee and has no power to exert any control over the work performed by the employee of the independent subcontractor. It arises by virtue of the general contractor's status as occupier of the property, independent of control, and is owed to those persons on the property having the status of invitees, Braun v. Wright, supra; Prosser, Torts § 78 at 453 (2d ed. 1955).

This duty, in conjunction with the allegations of negligence and causation, compels us to reverse and remand this cause of action to the District Court for further consideration, since we cannot be assured "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–56, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84; Des Isles v. Evans, 5 Cir., 1952, 200 F.2d 614, 615–616; Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264, 265.

The General Contractor relies primarily on language found in Wright v. Concrete Company, 1962, 107 Ga.App. 190, 129 S.E.2d 351, but its reliance is misplaced. In that case, Wright, an employee of the general contractor had been instructed by his employer to assist one of the cement-truck operators employed by a subcontractor. Wright stationed himself under the cement-pouring chute holding a latch to prevent its uncoupling and also to steady it. Wright was injured when the concrete poured over the sides of the chute and struck him, causing him to fall into the excavation. From the Georgia Court's discussion of the liability

---

3. "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such person for injuries oc-

casioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Ga.Code Ann. § 105–401.

of the subcontractor,[4] the General Contractor stresses:

"In an action such as this between a plaintiff who is a servant of one not connected with the litigation and a defendant tort-feasor who is not connected with the employment, the servant assumes all risks incident to the employment *except those arising from any negligence of the defendant.*" (Emphasis added.)

Manifestly this case cannot immunize the General Contractor from liability at this stage. In the first place, this is an instance where the general rule is qualified by an exception which virtually swallows the rule—"all risks * * * except those arising from any negligence of the defendant." The duty of the general contractor as occupier of the property to exercise ordinary care for the safety of the workers on the project being established, the allegations of the complaint, although perhaps inartfully drawn, are at least sufficient to raise an issue that will easily withstand a motion to dismiss for failure to state a claim. Second, *Wright* was not disposed of on the pleadings, but was remanded to the Trial Court because of erroneous instructions to the jury that had the effect of immunizing the defendant subcontractor

from injuries that might have been caused by its own negligence.[5]

Perhaps the Court below in its unrevealing order had in mind the idea that the high power lines must have been so visible to one on a dragline crane as to be obvious and hence not a condition against which an occupier would reasonably have to take protective action or give warning. But it's far too soon to arrive at such factual conclusions, whatever might be the Georgia law on their consequences. The complaint plainly sets forth an explanation as to why for busy workers it might be unsafe to leave wires in position or why other suitable warning steps might be needed.

What—and all—we have determined here is that the complaint states a claim under Georgia law and cannot therefore be disposed of on the pleadings. Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, 5 Cir., 1958, 257 F.2d 162, 167; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 691 n. 1; Navigazione Alta Italia v. Columbia Cas. Co., 5 Cir., 1958, 256 F.2d 26, 33; Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264, and especially cases cited p. 265, n. 1. We do not even attempt to intimate what will be the final outcome on remand to the District Court.[6] Chagas v. Berry, 5 Cir.,

4. The Court stated: "Special ground 4 of the amended motion for new trial assigns error on the following excerpt from the charge: 'An employee who knowingly assumes a dangerous position or goes to a place of danger at the instruction of his superior may have a right of action against his employer if he is injured as a result of being in that dangerous position or place, but as to third persons he must be held to have assumed that position or entered that place voluntarily.'

"While the instructions given regarding the relationship between employer and employee would not be a complete statement of the law in an action between those parties * * * the last clause correctly . sets out the relationship between the servant and third parties. In an action such as this between a plaintiff who is a servant of one not connected with the litigation and a defendant tort-feasor who is not connected with the employment, the servant assumes all risks incident to the employment except those

arising from any negligence of the defendant." 129 S.E.2d at 353.

5. "What we are holding is that the instruction as given is incorrect as an abstract statement of law. * * * The charge given under the evidence in this case removed from the jury's consideration all of the negligence of the defendant upon which a verdict could have been rendered and was tantamount to directing it against him." 129 S.E.2d at 355.

6. Thus, while we hold that the Employee has a potential right to recover for his injuries, we are unable at this stage of the proceeding to evaluate the legal theories, e.g., voluntary assumption of risk, contributory negligence, which might isolate the General Contractor from liability or at least reduce the Employee's recovery under the Georgia doctrine of comparative negligence. Ga.Code Ann. § 105–603; Mixon v. Atlantic Coast Line R.R. Co., 5 Cir., 1966, 370 F.2d 852.

1966, 369 F.2d 637, 642 [Dec. 12, 1966]; Garrett v. American Airlines Inc., 5 Cir., 1964, 332 F.2d 939, 944, 3 A.L.R.2d 930; Millet v. Godchaux Sugars, supra, 241 F.2d at 267. Nor for that matter do we even forecast how far the case will get, and certainly not that there is necessity for a full-blown trial, Smoot v. State Farm Mut. Auto Ins. Co., 5 Cir., 1962, 299 F.2d 525, 534. Indeed, once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, it may well wash out on summary judgment, Bruce Constr. Corp. v. United States, 5 Cir., 1957, 242 F.2d 873, or if not then, then later on motion for directed verdict after the plaintiff's or all of the evidence is in. River Brand Rice Mills Inc. v. General Foods Corp., 5 Cir., 1964, 334 F.2d 770, 773.

Reversed and remanded.