**COOK & NICHOL, INC., Plaintiff-Appellant,**

v.

**The PLIMSOLL CLUB, Leo S. Weil et al., Defendants-Appellees.**

**No. 71–1270**

**Summary Calendar.** *

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1971.

Roney, Circuit Judge, concurred and filed an opinion.

* [1] Rule 18, 5 Cir., Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

John W. Haygood, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff-appellant.

Harvey C. Koch, Frederick A. Kullman, Harvey J. Lewis, Beard, Blue, Schmitt & Treen, Kierr & Gainsburgh, New Orleans, La., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This heated controversy over air cooling the members of New Orleans' Plimsoll Club proves again that a complaint above the Plimsoll line may not be dismissed for failure to state a claim. It reminds us of the need for periodic exercise, for over and over and over again —but apparently not often enough—this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple, long-established, well-publicized rule of Federal practice: a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.[1] Webb v. Standard Oil Co., 5 Cir., 1969, 414 F.2d 320;[2] Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264;[3] Arthur H. Richland Co. v. Harper, 5 Cir., 1962, 302 F.2d 324;[4] Barber v. Motor Vessel "Blue Cat", 5 Cir., 1967, 372 F.2d 626;[5] Pred v. Board of Public Instruction of Dade County, Florida, 5 Cir., 1969, 415 F.2d 851 [6]—just to name five of the more

1. The Supreme Court enunciation of the rule is, of course, in Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80.

2. "In this Circuit the 'high mortality rate' of dismissals on the 'barebones pleadings' is a well-publicized fact." 414 F.2d at 320.

3. "A principle, repeated with remarkable frequency in the plainest terms of direct simplicity, and carrying with it a compelling sense of emphasis, has again been misread, misunderstood, or misapplied, requiring again its republication." 241 F.2d at 265.

4. "This is another case proving that final disposition of a civil action on the basis of barebones pleadings is a tortuous thing. How a standard so simply expressed, so often repeated, is apparently so often overlooked without even so much as a deferential mention of it is hard to understand. Although it seems now to be an affectation, we repeat it again, though citation of case names as a shorthand symbol of the principle ought to be enough." 302 F.2d at 325.

5. "To dismiss the libel with prejudice was to go too fast too soon. As with nearly every one of these situations, the Trial Court failed to require the parties to exploit the marvelous tools now available by summary judgment or otherwise to demonstrate whether the facts, as distinguished from what the lawyers said the facts would be, would bear out a claim and if so to what extent. Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788. Now a year and a half later, the case must go back to decide whether such facts exist as to a claim that arose in 1963." 372 F.2d at 629.

6. "This is another monument to needless waste of lawyer and Judge time and,

than sixty cases which this Court alone has reversed since 1938 after a Trial Court had dismissed the complaint for failure to state a claim upon which relief could be granted.[7] Still, with regularity, case after case comes before this Court where a complaint has been dismissed on "barebones pleadings" alone, and the casualty count continues to soar.[8]

Such is the case here. For "without even so much as a deferential mention"[9] of the rule recounted above, this case reaches us on the following skeleton record: (i) a complaint alleging among other counts, a contract between two parties and a failure of one party to pay the other party the contract price, (ii) a defendants' motion, without so much as a denial of a single allegation, to dismiss the complaint for failure to state a claim upon whch relief can be granted, (iii) a judgment dismissing the suit, with prejudice (preceded by a memorandum purporting to be Findings of Fact and Conclusions of Law), and understandably (iv) a notice of appeal. With this prologue, an announcement of a reversal and remand is almost superfluous.

All of this is highlighted by the fact that in the present case (as will be discussed in more detail later) there is an allegation of the existence and subsequent breach of a contract. While that assertion may prove nothing more than a futile, desperate attempt to bring the facts of this case within some recognized legal doctrine, nothing is more elementary in law than that a breach of contract is actionable.[10]

---

perhaps more important, client money. For now, 14 months later, the case must go back to start the normal process of discovery leading to the production of facts or the demonstrated lack of them on which, either before or after a conventional trial, the real merits of the case will be determined. This is but a different prelude to the common refrain on the high mortality rate to a dismissal under F.R.Civ.P. 12(b) for failure to state a claim. To the usual perils should be added the unsoundness—both administratively and substantively—of trying, in the orbital atmosphere of this dynamic era, to resolve new, but serious, questions of constitutional law on barebones pleadings. * * * Courts ordinarily should grapple with these problems on a factual record."
425 F.2d at 852.

7. In Millet v. Godchaux, *supra*, we set out an initial catalogue of some thirteen such cases from this Circuit which had been remanded to that time. 241 F.2d at 265 n. 1. In Barber v. Motor Vessel "Blue Cat," *supra*, we supplemented that list with an additional twenty-two such cases. 372 F.2d at 627 n. 1. In 1969, we updated the list by adding another fourteen cases in Pred v. Board of Public Instruction of Dade County, Florida, *supra*. 415 F.2d at 852 n. 1.
Now in keeping with our computer oriented interest in statistics, we add these as the fourth installment. Singleton v. Foreman, 5 Cir., 1970, 435 F.2d 962;

Orr v. Thorpe, 5 Cir., 1970, 427 F.2d 1129; Merlite Land, Sea & Sky, Inc. v. Palm Beach Investment Properties, Inc., 5 Cir., 1970, 426 F.2d 495; Herpich v. Wallace, 5 Cir., 1970, 430 F.2d 792; Westinghouse Electric Supply Co. v. Wesley Construction Co., 5 Cir., 1969, 414 F.2d 1280; Equity Capital Co. v. Sponder, 5 Cir., 1969, 414 F.2d 317; and Williams v. Avondale Shipyards, Inc., 5 Cir., 1971, 452 F.2d 955.

8. From the standpoint of a busy trial judge who is naturally anxious to clear out a case, it is not necessarily as bad as it seems. When used with care, there is a time and a place for 12(b) motions to dismiss. See, e. g., Jaeger v. Freeman, 5 Cir., 1969, 410 F.2d 528; International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service, 5 Cir., 1968, 400 F.2d 465.
We disavow that our test is so rigid that a trial court can safely dismiss a complaint under 12(b) only if the record establishes its insufficiency to the extent which prompted Judge Huston's exclamation: "The wisdom of Solomon, accentuated by the legal lore of Coke and Mansfield, could not devise a judgment which this complaint would support." Wilson v. Thompson, 1896, 4 Idaho 678, 680, 43 P. 557.

9. Arthur H. Richland Co. v. Harper, *supra*, note 4.

10. "It may be that the action is frivolous and without merit and it is quite likely that the district judge had personal

This heated dispute arose, ironically, out of a contract to install central air conditioning equipment. Cook & Nichol, Inc. brought suit against the Plimsoll Club of New Orleans claiming that the latter had been unjustly enriched (or at least centrally cooled) at the Plaintiff's expense. Alternatively, the petition alleged the existence of an implied in fact contract between Plimsoll and a Joint Venture,[11] and non-payment by the Club under the contract.

On the first count, it was alleged that Plimsoll had contracted orally with Godchaux to install heating and air conditioning equipment in the Plimsoll Club's premises on the 30th floor of the International Trade Mart Building in New Orleans on a cost-plus basis. The remainder of the building was being air conditioned by the Joint Venture. Godchaux charged materials and labor bills arising from his individual contract with Plimsoll to the Joint Venture, and these bills were paid subsequently by Godchaux with funds of the Joint Venture. Because Moses, Plimsoll's supervising engineer, knew of and approved these interim construction payments, knowledge is imputed to Plimsoll. Likewise, Moses, acting for Plimsoll, accepted the work and approved final payment by Plimsoll of the contract price to Godchaux. Moses is also named, along with his firm, as a defendant in this suit. Godchaux was subsequently adjudicated a bankrupt without having paid the bills or repaid the Joint Venture for its funds which he used in his individual contract with Plimsoll. Cook & Nichol, as successor in interest to the Joint Venture, seeks to recover from Plimsoll for the Joint Venture funds of which Plimsoll ultimately enjoyed the benefits.

Cook & Nichol's first theory on this count can be easily stated and just as readily dismissed. Plaintiff claims that Plimsoll, in effect, received the use of Joint Venture funds, that it was not entitled to such benefit, and that, in the Codal language, "he who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it." Article 2301, LSA–Civil Code.

■ The difficulty with this theory, of course, is that since Plimsoll contracted with Godchaux for installation of heating and air conditioning equipment, if it paid Godchaux every cent due him under the contract, it got nothing more than what it paid for and was obligated for. Mere payment to Godchaux could not unjustly enrich Plimsoll, and without unjust enrichment there could be no quasi-contractual obligation to Cook & Nichol arising under Louisiana law. Thompson v. Taylor, C.A.La., 1969, 192 So.2d 609; Martin v. Bozeman, C.A.La., 1965, 173 So.2d 382. Alternatively stated, the Louisiana law is that "the substance of an action for unjust enrichment lies in a promise, implied by law, that one will restore to the person entitled thereto that which in equity and good conscience belongs to him." Martin v. Bozeman, *supra*, at 386. If Plimsoll merely paid Godchaux, in accordance with the provisions of its contract, and these were the only allegations of the complaint, it would be difficult to conclude that equity and good conscience demand that Plimsoll pay for its heating and air conditioning equipment a second time. Under that state of facts a dismissal for failure to state a cognizable claim would have been proper.

■ But the case does not end right there, for Cook & Nichol also alleges that Plimsoll had direct knowledge of Godchaux's misuse of Joint Venture funds in execution of his individual contract with Plimsoll, but nonetheless accepted benefits from Godchaux's misconduct without taking steps to assure that the

knowledge of facts which would sustain that conclusion. There is, however, nothing in the record to that effect, and the allegations in the petition must be taken as true."

. Sanders v. Beach, 10 Cir., 1960, 283 F. 2d 946, 947.

11. The Joint Venture consisted of Cook & Nichol and Godchaux.

Joint Venture was protected or reimbursed. Though the words of the complaint never specifically use the terms, that allegation introduces elements of willful taking of the property of another. Liberally construed and accepted as true, these facts would seem to fit squarely within the maxim of Article 2301, *supra,* if not within companion Article 1965.[12]

But that determination depends on the *facts* and the subtle nuances of the facts which so often shape equity's response and relief. Did Plimsoll actually participate in Godchaux's scheme, thereby securing for itself benefits to which it was not justly entitled (the use of Joint Venture funds)? Important factors in this determination would include the actual relation of Moses and Plimsoll, especially concerning Moses' authority to act for Plimsoll, and the requirements, if any, of prior action by him as a condition to payment by Plimsoll. In what way and how positively did Moses know that Joint Venture funds were being used? What communication of any such facts was made to the responsible management of Plimsoll? Assuming Moses knew in fact of Godchaux's current misuse of Joint Venture funds, did he know—or should

he have discovered—that they were not being repaid?

With the *Erie* light in this case being the noble principles and equitable sentiment of the Golden Rule,[13] we cannot say for Louisiana that the outcome would not likely be affected by one or more or all of these considerations. So until these factual issues are resolved, or at least squarely faced, and it is demonstrated that equitably appealing facts do not exist or cannot be proven, dismissal of this count of the complaint is premature and impermissible.[14]

■ As to Cook & Nichol's second and third counts, those seeking to hold Moses and his firm (not Plimsoll) liable for "assisting" in Godchaux's tortious conduct by authorizing Plimsoll to pay Godchaux despite knowledge that Godchaux was unlawfully misappropriating Joint Venture funds to finance his part of the Plimsoll contract, again a fundamental fact question controls: Did Moses owe any duty—contractual, quasi-contractual, express, implied, or other—to Cook & Nichol by virtue of the relationship between Moses, Plimsoll, Joint Venture, Cook & Nichol, and Godchaux?[15]

12. Apparently Article 1965 of the Louisiana Civil Code is intended to be nothing less than a modern codification of the Biblical Golden Rule, for it provides:
"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
Although inaccurate from an historical perspective (this "Rule" can be traced back to Rabbi Hillel's teaching nearly 200 years before the birth of Christ, and even earlier, to the sayings of Confucius approximately 800 years before) this article demonstrates that cases on unjust enrichment are to be decided upon the flexible principles of justice and good conscience embodied in equity, rather

than the rigid formalism of the common law, or civil codifications thereof.

13. See note 12, *supra.*

14. It is not at all unlikely that the facts will also reveal an equitable defense. For example, given flexible, equitable controlling principles, it may develop that Cook & Nichol was duty-bound to audit the affairs of the Joint Venture of which it was a partner, and that it failed to discharge this responsibility properly. Under such circumstances, equity might dictate that Cook & Nichol should not recover, if its own negligence or irresponsibility occasioned the loss.

15. The legal conclusion that a duty was owed depends upon a disentanglement of the rather complex factual setting in which this controversy arose. From the briefs, we understand that Moses was also involved in some supervisory capacity with the installation of the heating and air conditioning equipment in the remainder of the International Trade Mart Building. If so, that fact may have

Moses cites two authorities to support his proposition that he could not, under any state of facts, be held liable to Cook & Nichol. Both of these are inapposite. In Day v. National U. S. Radiator Corp., 1961, 241 La. 288, 128 So.2d 660, the plaintiff was killed when a hot water boiler exploded prior to its final installation. Defendant architects had contracted with the owner to design the system and approve its installation. The accident apparently resulted, at least in part, from the architects' failure to supervise properly during installation and before final completion of the job. The Louisiana Supreme Court decided the case on the basis of the fact that interim supervision was not required under the architects' contract—which is opposite to the situation at bar.[16]

Thomas v. Fromherz Engineers, C.A. La., 1964, 159 So.2d 612, writ ref'd [Mar. 11, 1964], the second case relied on by Moses, is similarly distinguishable, since it rests on the fact that the injury resulted from faults in equipment over which the architect had "no apparent contractual or actual control." 159 So.2d at 614. But, the facts of the instant case *might* show that Moses had complete, actual control over Godchaux's financial dealings, because he alone could authorize payment by Plimsoll to Godchaux and with knowledge of the misuse of Joint Venture funds, he could have refused to approve payment to Godchaux until the Joint Venture was reimbursed. On the basis of the pleadings alone, we cannot

say that Cook & Nichol would certainly lose.

■ Finally, Cook & Nichol offers an alternative theory. Since the Joint Venture paid all the bills—and Plimsoll knew this—and the Joint Venture was air conditioning the rest of the building, the contract was really between Plimsoll and the Joint Venture, not Plimsoll and Godchaux. Here an implied in fact contract is alleged, and, it is asserted, the Joint Venture was not paid as due under the contract.

Whether or not the facts will sustain this pleading is completely irrelevant to our disposition here. For surely the count sets forth a plain vanilla, simple breach of contract cause of action. It is difficult to imagine a more straightforward and well-recognized claim, but defendants still moved to dismiss for failure to state a claim upon which relief could be granted.

It is not unwarranted to suppose that Plimsoll's real objection to this count is not that it fails to state a claim, but rather that it is a " 'bucketfull of steam * * * its allegations are billowing vapor, without substance * * *.'

"But we repeat again and again and again: this is not the test. Whether this is all steam, or whether there is some substance depends on the proof offered either on a trial or on a motion for summary judgment demonstrating that there is no genuine controversy as to this critical, decisive issue under applicable

---

some bearing on the question of duty, since Cook & Nichol, as partners in the Joint Venture, were the sub-contractors performing this work.

16. The Louisiana Supreme Court went out of its way to stress that "we should point out that we do not have here a case where [the architects] inspected and approved the installation, or even *where they had knowledge* of the installation and stood by and permitted the boiler to be tested without having proper safety devices; or a case where they visited the site after the completion of the installation and, *knowing* that the boiler was to be tested, failed to observe that the boiler was not equipped with the

safety devices stipulated in the specifications. Under such circumstances we should not hesitate to say that they breached a duty and that they reasonably should have foreseen that this breach would cause damage." (emphasis supplied)
128 So.2d at 666.
This would suggest that a supervising engineer who has knowledge of the possibility of injury to third parties resulting from his failure to act in an area related to the course of his particular employment, does owe a duty to such third party to take such action as he reasonably can or should to prevent harm to the third party.

legal principles. Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690; Camilla Cotton Oil Co. v. Spencer Kellogg and Sons, Inc., 5 Cir., 1958, 257 F.2d 162; Braniff v. Jackson Ave.–Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523." Arthur H. Richland Co. v. Harper, *supra*, 302 F. 2d at 326.

Now, as to the final outcome of this case, we do not suggest "even the slightest whisper of a possible opinion or prejudgment." [17] Once again we sound this caveat:

> "What—and all—we have determined here is that the complaint states a claim under [Louisiana law] and cannot therefore be disposed of on the pleadings. Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, 5 Cir., 1958, 257 F.2d 162, 167; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 691 n. 1; Navigazione Alta Italia v. Columbia Cas. Co., 5 Cir., 1958, 256 F.2d 26, 33; Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264, and especially cases cited p. 265, n. 1. We do not even attempt to intimate what will be the final outcome on remand to the District Court. Chagas v. Berry, 5 Cir., 1966, 369 F.2d 637, 642; Garrett v. American Airlines Inc., 5 Cir., 1964, 332 F.2d 939, 944, 3 A.L.R.2d 930; Millet v. Godchaux Sugars, supra, 241 F.2d at 267. Nor for that matter do we even forecast how far the case will get, and certainly not that there is necessity for a full-blown trial, Smoot v. State Farm Mut. Auto Ins. Co., 5 Cir., 1962, 299 F.2d 525, 534. Indeed, once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, it may well wash out on summary judgment, Bruce Constr. Corp. v. United States, 5 Cir., 1957, 242 F.2d 873, or if not then, then later on motion for directed verdict after the plaintiff's or all of the evidence is in. River Brand Rice Mills, Inc. v. General Foods Corp., 5 Cir.,

1964, 334 F.2d 770, 773." Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788, 791–792, *quoted in* Webb v. Standard Oil Co., *supra*, 414 F.2d at 324. (footnotes omitted).

So once again we must send the case back for the Trial Court to determine what the facts are, and not merely what the lawyers say they will be.[18]

Reversed and remanded.

RONEY, Circuit Judge (concurring):

I concur in the decision to reverse because it appears that Count IV alleges facts sufficient to state a cause of action. Inconsistent as these facts may be with the rest of the complaint, they must be accepted as alleged on a motion to dismiss. This makes it unnecessary to decide the sufficiency of the other counts because when any one count "if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." F.R.Civ.P. Rule 8(e) (2).

---

17. Mizell v. North Broward Hospital Dist., 5 Cir., 1968, 392 F.2d 580.

18. Tyler v. Peel Corp., *supra*; Barber v. Motor Vessel "Blue Cat," *supra*.