Kevin VANDENBOSSCHE, Plaintiff,

v.

FIRST NATIONAL BANK OF ROCHESTER, A National Banking Association, City Securities Corporation, An Indiana Corporation, and John Michael Perry, Defendants.

No. 89–84–CIV–FTM–13A.

United States District Court, M.D. Florida, Fort Myers Division.

April 11, 1990.

Thomas R. Grady, Naples, Fla., Robert F. Nunez, Nunez & Deakyne, St. Petersburg, Fla., for plaintiff.

Burton W. Wiand, Fowler, White, Clearwater, Fla., for defendants.

## ORDER

KOVACHEVICH, District Judge.

Plaintiff, Kevin VandenBossche, brought this action against the First National Bank of Rochester ("the bank") and against City Securities Corporation and John Michael Perry (collectively, "the brokers"). Since filing this action, plaintiff has voluntarily dismissed the bank with prejudice. Meanwhile, City Securities and Perry, the broker defendants, have moved to dismiss the complaint or, alternatively, for summary judgment. For the reasons set forth herein, defendants' motion to dismiss or for summary judgment is granted in part and denied in part.

Rule 12 provides that when, on a motion to dismiss for failure to state a claim upon which relief can be granted, a party presents matters outside the pleading the Court may treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b). Here, the broker defendants have submitted affidavits and exhibits in support of their motion to dismiss or for summary judgment. In response, plaintiff too has submitted documentary evidence. Therefore, the motion may properly be treated as one for summary judgment. Yet, the evidence submitted does not speak to all of plaintiff's claims. Therefore, the Court will proceed with defendants' motion as one to dismiss on counts where no outside material has been submitted and as one for summary judgment on the counts where the opposite is true.

■ It is well established that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts that could be proved in support of his claim." *Cook & Nichol, Inc. v. The Plimsoll Club*, 451 F.2d 505, 506 (5th Cir.1971). *Accord, Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In evaluating the sufficiency of a complaint for purposes of a motion to dismiss, the allegations of the complaint must be accepted as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), and viewed in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In making this determination, the Court must view all of the evidence in a light most favorable to the nonmoving party. *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The burden of establishing the absence of a genuine issue is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the burden extends only to facts that might affect the outcome of the suit under the governing law. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once this burden is met the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. However, a plaintiff need only present evidence from which a jury might return a verdict in his favor in order to survive a summary judgment motion. *Samples on Behalf of Samples*, 846 F.2d at 1330.

### THE FACTS

The following facts are undisputed unless otherwise indicated: Plaintiff was the sole beneficiary of a trust established in Indiana in 1975, when he was a minor. *See* Trust Agreement. By the terms of the trust, upon reaching his majority plaintiff was deemed the grantor of the trust as well. *Id.* at 2. As grantor of the trust, plaintiff could direct the trustee in matters of accumulation, investment, and disbursement of the trust's net income. *Id.* at 3A.[1] Plaintiff, as grantor, could also terminate the trust at any time. *Id.* at 3B.[2]

The bank became trustee of this trust in 1978, prior to plaintiff reaching his majority. *See* Successor Trustee Agreement of March 31, 1978. The bank continued as trustee after plaintiff attained his majority and became the grantor. The bank further continued as trustee after plaintiff/grantor moved to Florida. *See* Successor Trustee Agreement of May 22, 1987. As trustee, the bank was responsible for managing and investing the trust property. Trust Agreement, para. 3. This power was limited, however, by the following provision:

> Trustee shall have no power, right or obligation to change the initial investment of the Trust Property in the Five Thousand Twenty-nine (5,029) shares of common stock of the Wickes Corporation acquired by the Trustee hereunder un-

---

1. The trust agreement, at paragraph 3A, provides: Trustee shall accumulate, invest and reinvest the net income from the Trust and pay out the net income from the Trust at such times and in such manner as may from time to time be directed to the Trustee by the Grantor....

2. Plaintiff, in his complaint, affidavits, and memoranda, often refers to the trust assets as his own and to the trustee as his agent. Plaintiff has not presented any authority for the proposition that the beneficiary or grantor of a trust is entitled to treat the trust corpus as his own. Until plaintiff presents such authority, the Court will recognize the trust as a legal entity separate and apart from plaintiff.

less the prior written approval of the Grantor is first had and obtained.

Trust Agreement, para. 5B.

The bank maintained an account with City Securities for the trust's investments. Defendant Perry was a stock broker employed by City Securities who worked on the bank's securities account. Perry Affidavit, para. 2. Occasionally, after plaintiff reached his majority, he would call the bank for tax and investment advice. On some of these occasions, the bank told plaintiff that its advice was based on communications it had with the brokers. At other times, plaintiff would direct the bank to sell certain investments. After making such directions, plaintiff would receive a transaction confirmation on a form with City Securities' name on it. Vanden-Bossche Affidavit of May 12, 1989, paras. 8–12.

On August 28, 1987, plaintiff met with the Bank, in Indiana, in person. Complaint, at para. 12. Plaintiff had contracted to purchase a house in Florida and had decided to liquidate the trust assets in order to pay for the house. At the August 28 meeting, the bank spoke with the brokers over the phone and wrote down that day's market price for each of the securities held by the trust. *Id.* Plaintiff avers that on September 1, 1987, he gave the bank an unqualified order to sell all the securities in the trust and that the bank conveyed that order to the brokers. VandenBossche Affidavit of May 12, 1989, paras. 13–14. Plaintiff further avers:

Shortly thereafter, the Bank advised [him] that it was unable to sell shares of common stock in Wickes Companies, Inc. ("Wickes") because a reverse stock split in August had rendered [his] securities unmarketable. Further, the Bank stated unequivocally that the investment advice and opinion of the Brokers ... was the same....

VandenBossche Affidavit of May 12, 1989, para. 15.

On October 16, 1987, plaintiff executed documents (1) authorizing the bank to sell all the Wickes stock held by the trust

"within a reasonable period of time"; (2) authorizing the bank to borrow money to be applied to the purchase of plaintiff's house and to be repaid from the proceeds of the Wickes sale; and, (3) dissolving the trust. *See* Letter executed by Vanden-Bossche on October 16, 1987.

Other evidence of the events surrounding the liquidation of the trust show the following: By letter dated September 9, 1987, and addressed to the attention of Mike Perry at City Securities, the bank made the following request from the brokers:

Below is a list of stocks that we need your opinion and/or recommendations for selling. This is the ones [sic] we discussed on the telephone. We need to sell enough to profit $70,000.00. I would appreciate your help.

The list of stocks included "5,282 shares of Wickes Companies, Inc. (before the 1for [sic] 5 split)." The brokers aver that all the stock transactions alleged in the complaint took place on the day that the bank directed the brokers to perform the sales. Perry Affidavit, para. 4 & exh. A. The brokers have submitted copies of the order tickets for the sales of the trust securities. These tickets reflect the date that the order was received and the date the order was carried out. *Id.* at exh. A. Each of the tickets reflect that the date the order was received and the date the order was carried out are identical.[3] *Id.* The dates on all of the tickets show that the majority of the trust's securities were sold on September 14, 1987. One other company's stock was sold on September 21, 1987, and the Wickes stock was sold on January 15, 1988. *Id.*

## THE CLAIMS

The gravamen of plaintiff's complaint is that he was injured by the gap in time between his direction to sell the trust securities on September 1, 1987, and the eventual sales of the securities on September 14, 1987, September 21, 1987, and January 15, 1988. The injury consists of plaintiff's having to borrow money to follow through on his contract to purchase a house and the

---

**3.** The tickets also reflect the times at which the orders were received and carried out.

loss of profits on the delayed sale of the securities because of a drop in the market. In the complaint, plaintiff makes general allegations against all the defendants without distinguishing between them. However, plaintiff has voluntarily dismissed the bank. The Court, therefore, must confine its attention to the claims as they stand against the remaining defendants.

■ In Count I, plaintiff claims that defendants "implicitly agreed, in accordance with applicable law and prior business dealings, to enter all trades requested by the Plaintiff, and to do so promptly." Complaint, para. 27. Defendants allegedly breached that "implied contract" when they "failed to timely execute market orders delivered to them by the Plaintiff on September 1, 1987." Complaint, para. 28. *See also* Complaint, para. 25. The Court need look no farther than the face of the complaint and the attached trust agreement, to determine the viability of this claim.

Though plaintiff does not make any distinction between the defendants, the Court will. The bank, as trustee, was indeed obligated, pursuant to the explicit terms of the trust agreement, to accept investment directions from plaintiff regarding the net income from the trust. *See* Trust Agreement, paras. 3A & 2.[4] However, the trust agreement did not authorize plaintiff, as beneficiary or grantor, to direct anyone other than the trustee. Plaintiff did not have a contractual or customer relationship with the broker defendants. The bank, as trustee, was the brokers' customer, not plaintiff. Thus, there was no implied contract between plaintiff and the brokers, and Count I fails to state a claim against the broker defendants. Additionally, the Perry affidavit is uncontroverted in its statement that plaintiff was not a customer of the brokers'. Summary judgment in favor of the brokers would also be appropriate on Count I.

■ Plaintiff asserts a claim against the defendants for negligence and gross negli-

gence in Count II. Plaintiff claims that "his" account was handled in a negligent manner by the defendants. Again, plaintiff does not distinguish between the defendants. Plaintiff attempts to state a claim against the brokers by being vague about which defendant took what action. Plaintiff's affidavits make it clear, however, that he spoke with the bank, who in turn spoke with the brokers. Plaintiff has stated what the bank told him that it told the brokers, but he does not put forth any evidence of what the bank actually did tell the brokers. Plaintiff's belief that the brokers were directed to sell all of the trust's securities on September 1, 1987, but delayed the sale, is unsupported by his affidavits.

Plaintiff further relies on the letter of September 9, 1987 from the bank to the brokers for proof that the brokers were directed to sell all of the trust's securities prior to the actual dates of sale. Yet, that letter did not direct the brokers to sell anything and it tends to show that the bank did not direct any sales prior to the date of the letter, either. In the letter, the bank trust officer asked for advice on what to sell in order to net $70,000, which is a far different thing from authorizing the sale of all securities. Defendant has presented evidence that sale orders were executed on the date they were received from the bank. Perry Affidavit, para. 4 & exh. A. Plaintiff has failed to present evidence contrary to that of defendants. Therefore, as a matter of law, defendants are entitled to judgment on plaintiff's claim of negligence in the delayed sale of securities.

■ In Count III, plaintiff claims that defendants breached their fiduciary duties owed to plaintiff. The fiduciary duties allegedly owed to plaintiff were:

 (a) To handle his account in accordance with his stated investment objectives and the standards of the industry regarding the timeliness of executing buy and sell orders initiated by the Plaintiff; and

---

**4.** Plaintiff seems to equate his authority to direct net income investments with his total con-

trol and ownership of the trust assets.

(b) The duty not to misrepresent any material fact to any transaction or relationship between the Plaintiff and the Defendants.

Complaint, at para. 39. This claim has not been supported by plaintiff.

First, as discussed above regarding Count I, plaintiff did not have a customer relationship with the brokers. Accordingly, the brokers owed no fiduciary duty to plaintiff. Any duty owed by the brokers was for the benefit of its customer, the bank. Plaintiff has been unable to support its allegation that the brokers failed to carry out orders as requested by the bank. *See* discussion above regarding Count II. Additionally, plaintiff's complaint fails to specify any misrepresentations made by the brokers; neither does plaintiff submit any evidence of misrepresentations by the brokers. *See* discussion below regarding Count VI. Accordingly, defendants are entitled to judgment on Count III.

■ Plaintiff's Count IV asserts a claim for absolute liability under The Florida Securities and Investor Protection Act, Florida Statutes chapter 517 (1987):

No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this State, or sell securities in this State to persons of this State from offices outside this State, by mail or otherwise, unless the person has been registered with the Department pursuant to the provisions of this Section.

Fla.Stat. § 517.12(1) (1987). That act is wholly inapplicable against the brokers since (1) the brokers had no connection with the state of Florida inasmuch as they dealt with their customer, the bank, in Indiana and all the transactions alleged in the complaint took place in Indiana, and (2) plaintiff does not have standing under the act since he was not a purchaser or seller of securities inasmuch as the securities were owned by the trust. Count IV must therefore be dismissed.

■ Similarly, Count V must be dismissed. In that count, plaintiff attempts to state a claim for civil theft pursuant to chapter 772, Florida Statutes. However, a claim under chapter 772 is dependent on a violation of chapter 812 or chapter 517. Since plaintiff has failed to make out a claim for violation of chapter 517, *see* discussion regarding Count IV above, plaintiff must rely on a violation of chapter 812. Chapter 812 describes theft, robbery and related crimes. The chapter 812 crimes include an element of intent. *See* Fla.Stat. ch. 812 (1987). Plaintiff agrees that his complaint must include an allegation that defendants intended to temporarily or permanently deprive him of his property. However, plaintiff contends that he met this element because he has alleged that the Bank used the property of plaintiff with such intent. Though that allegation may be sufficient to state a claim against the bank, it is not sufficient as against the broker defendants. Accordingly, Count V must be dismissed.

■ The Court is unable to say that Count VI fails to state a claim for common law fraud. Though allegations of fraud must be plead with specificity, Fed.R.Civ.P. 9(b), and the allegations in the complaint are not, plaintiff is in an untenable position. Plaintiff did not speak directly with the brokers when they allegedly made the statements. Therefore, he is not in a position to know exactly what was said by whom. Plaintiff has alleged, however, the dates of the statements, the substance of the statements, the account that the statements were made in reference to, and who the statements were made to. Thus, the allegations, though not as specific as would be preferred, are sufficient to put the brokers on notice of what the claim against them is.

The other elements of fraud, in addition to "a false statement concerning a material fact," are "knowledge by the person making the statement that the representation is false," "the intent by the person making the statement that the representation will induce another to act on it," and reliance upon the representation to the injury of the other party." *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984). Plaintiff has adequately pled knowledge, intent, and reasonable reliance. The Court must rule on this

count based on the complaint alone since neither defendants nor plaintiff have submitted evidence on this question. Therefore, Count VI will stand.

Plaintiff claims, in Count VII, that defendants violated Florida and federal securities laws. As all the transactions and dealings took place in Indiana, between the brokers and their Indiana customer, the bank, Florida law is inapplicable. In addition, The Florida Securities and Investor Protection Act provides no remedy for plaintiff since he neither sold nor purchased securities. *See* Fla.Stat. §§ 517.-301, .211 (1987).

Plaintiff claims to have been injured by defendants' violation of section 17 of The Securities Act of 1933, 15 U.S.C. § 77q.[5] Defendants did not address the applicability of this provision to this action. Accordingly, Count VII, as it pertains to The Securities Act of 1933, will stand. However, as Count VII pertains to Florida law, it must be dismissed.

 Finally, defendant Perry seeks the dismissal of all claims against him due to this Court's lack of personal jurisdiction over him. Perry has submitted his affidavit in which he avers that he had no contact with plaintiff in Florida or elsewhere. Plaintiff has not rebutted this affidavit with any evidence. Plaintiff has stated in his memorandum, at 18, that the complaint alleges extensive contacts between Perry and plaintiff in Florida. Yet, plaintiff concedes elsewhere that he never spoke directly to the brokers—all of his contact with the brokers was through the bank as intermediary. This is as expected since the bank was the customer of the brokers. Plaintiff was not a customer of the brokers. Therefore, plaintiff's residence in Florida does not create personal jurisdiction over Perry in Florida. Accordingly, the complaint against Perry must be dismissed *in toto*.

Accordingly, it is ORDERED

Defendants' motion to dismiss or for summary judgment is GRANTED in part: (a) The complaint against defendant Perry is hereby DISMISSED with prejudice; (b) Counts I, IV, V, and the Florida law claim in Count VII are hereby DISMISSED; (c) Defendants are granted summary judgment on Counts II and III.

Defendants' motion is DENIED in all other respects.

DONE AND ORDERED.

---

5. The complaint does not specify which section plaintiff relies on, but his memorandum in opposition to the motion to dismiss does so.